JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

**MEMO ENDORSED**

Charles Joseph
D. Maimon Kirschenbaum
Denise Schulman
Josef Nussbaum
Lucas Buzzard
Leah Seliger
Michael DiGiulio

32 Broadway, Suite 601
New York, NY 10004
Tel: 212-688-5640
Fax: 212-688-2548
www.jk-llp.com

*For the reasons stated at the conference on April 2, 2025, Plaintiff's motion for settlement approval under* Cheeks *is GRANTED. The Clerk of Court is directed to terminate ECF No. 112.*

January 20, 2025

**VIA ECF**

Dated: April 3, 2025
New York, New York

SO ORDERED.

*Jessica Clarke*

Honorable Jessica G.L. Clarke
United States District Court
Southern District of New York
500 Pearl St. New York, NY 1000

JESSICA G. L. CLARKE
United States District Judge

Re: *Tenezaca, et al, v. 808 Lex Restaurant, LLC, et al*,
23-cv-08545 (JGLC)

Dear Judge Clarke:

We represent Named Plaintiff Malvin Luna, as well as six other plaintiffs[1] who opted-in to this lawsuit by executing consents to sue under the Fair Labor Standards Act ("FLSA"). The parties have reached a settlement that resolves the claims of these seven plaintiffs' claims, and their executed settlement agreement is annexed hereto as Exhibit 1 ("Agreement" or "Settlement Agreement"). We respectfully request that the Court approve the settlement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

I.   **Background And Procedural History**

This case involves claims brought under FLSA and New York Labor Law ("NYLL") by two sets of employees who worked at Il Gradino restaurant in Manhattan. Three of the Named Plaintiffs – Alfonso Tenezaca, Nelson Nacipucha and Renan Zamora-Flores – worked as tipped front of the house employees at Il Gradino and bring classwide claims on behalf of tipped employees of the restaurant. The other Named Plaintiff, Malvin Luna, worked in Il Gradino's kitchen and was paid differently than the tipped employees at the restaurant. The instant application is made my Plaintiff Luna as well as six opt-in Plaintiffs who, like Mr. Luna, also worked in Il Gradino's kitchen (the "Plaintiffs") and are not be included in the putative class of tipped employees.[2]

---

[1] Specifically, Antonio Garcia, Apsalon Calle, Carlos Igna, Dany Espinal, Jose Antonio Contrares, and Marcos Garcia.
[2] At the same time that Plaintiffs reached a settlement with Defendants, the tipped employees also reached a settlement. As that settlement is a classwide settlement, those plaintiffs will separately and concurrently with this

In the Complaint, Plaintiff Luna alleges that Defendants violated various wage and hour laws under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Specifically, he alleges that Defendants: (a) failed to pay him overtime premiums in violation of the FLSA and NYLL; (b) failed to pay "spread of hours" pay for any day in which Mr. Luna's workday spanned more than ten hours. 12 NYCRR § 142-2.4; (c) failed to pay Mr. Luna on a weekly basis in violation of N.Y. Lab. Law § 191; and (d) failed to provide appropriate wage notices and wage statements as required under N.Y. Lab. Law §§ 195(1) and 195(3).

The parties engaged in substantial discovery, and all fact discovery was complete at the time this settlement was reached. All parties served and responded to interrogatories, and Defendants produced payroll records for most Plaintiffs. Plaintiffs deposed all three Defendants and Defendants deposed Plaintiff Luna.

In September 2024, the parties agreed to attend a mediation to explore a resolution of all of the claims asserted in the case. Based on the payroll records Defendants provided for Plaintiffs, we were able to estimate the Plaintiffs' "best case scenario" recovery if they were successful on all of their claims at trial. On November 19, 2024, the parties attended a mediation with the Hon. Allen Hurkin-Torres (Ret.) at JAMS. At the conclusion of the mediation, the parties were able to settle the seven Plaintiffs' claims for $160,000.

## II.    The Settlement Terms

As set forth in the Settlement Agreement, the parties have agreed to settle the Plaintiffs' claims for $160,000 (the "Settlement Sum"). The Settlement Sum is due to be paid by the later of (a) January 31, 2025, or (b) seven (7) days after the dismissal of these seven Plaintiffs' claims in this Action with prejudice. Agreement at ¶ 2(b) (To be clear, payment to the seven kitchen Plaintiffs' claims is not contingent on approval of the tipped front of the house plaintiffs' proposed classwide settlement. *Id*.)

The Settlement Agreement provides for a $5,000 Service Award to be paid to Named Plaintiff Luna. *Id*. ¶ 2.a.i.(2). This payment is in return for services he provided to the Opt-In Plaintiffs. The Agreement also provides for payment of $53,333.33 to Plaintiffs' counsel for attorneys' fees. *Id*. ¶ 2.a.ii. The remaining $101,666.67 of the Settlement Sum will be distributed to the Named Plaintiff and Opt-In Plaintiffs as allocated in a table set forth as Exhibit B to the Settlement Agreement. *Id*. ¶ 2.a.i.(1). As discussed below, the individual settlement amounts allocated to the Named and Opt-In Plaintiffs are based on the length of time they worked for Defendants, their estimated unpaid hours, and the penalties available on their N.Y. Lab. Law §§ 191 and 195 claims.

In consideration for payment of the Settlement Sum, Plaintiffs have agreed to release all Defendants from all federal and state wage-and-hour causes of action arising out of their employment with any of the Defendants that accrued at any time since the earliest possible date their employment began with Defendants (*i.e.*, from May 1, 2022 to the effective date of the agreement). Ex. 1 ¶ 4.

---

motion submit that settlement for preliminary approval in accordance with the class action settlement approval process.

### III. The Settlement Should Be Approved

Under *Cheeks*, a court must determine whether an FLSA settlement is fair and reasonable. *See* 796 F.3d 199, 206 (2d Cir. Aug. 7, 2015); *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016). "Because Cheeks itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019). Those relevant factors include:

> (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faces by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation marks omitted). Applying these factors, the settlement is fair and reasonable.

The total settlement amount of $160,000 is fair and reasonable in light of the Plaintiffs' range of possible recovery. Plaintiffs' maximum potential compensatory damages for unpaid wages under the FLSA are approximately $150,000. This number was arrived at by multiplying Plaintiffs' estimated number of overtime hours worked by their hourly overtime rate to arrive at the total amount of estimated overtime owed. In addition, if Defendants were unable to establish the good faith defense to liquidated damages, Plaintiffs could recover liquidated damages equal to the amount of their unpaid overtime. In addition to potential overtime damages, Plaintiffs' potential damages for spread of hours compensatory and liquidated damages, and other penalties under the NYLL (*e.g.*, violations of N.Y. Lab. L §§ 191, 195(1) and 195(3)) total roughly $123,000. Thus, the maximum possible recovery for all seven Plaintiffs is approximately $440,000 ($150,000 in unpaid overtime, $17,000 in spread of hours damages, $167,000 in liquidated damages for overtime and spread of hours, $35,000 in NYLL § 195(1) penalties, $35,000 in NYLL § 195(3) penalties, and $35,000 in NYLL § 191 penalties). The settlement amount of $160,000 is thus more than all the potential FLSA overtime damages Plaintiffs claim they are owed and roughly 36% of their "best case scenario" recovery in the case. *E.g., Khan v. Young Adult Inst., Inc.*, No. 18 Civ. 2824 (HBP), 2018 U.S. Dist. LEXIS 202494, 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) (collecting cases of reasonable FLSA settlements ranging from 25% to 40% of plaintiff's maximum recovery).

This settlement will allow the parties to avoid the anticipated burdens and expenses in establishing their claims and defenses. Absent a settlement, all parties would incur substantial expenses. Either or both sets of parties would likely move for summary judgment and a lengthy trial would almost certainly ensure for any claims that were not disposed of on summary judgment.

Significantly, Plaintiffs' estimates of the amount of overtime they worked is far from certain. Defendants' records reflecting Plaintiffs' hours worked are incomplete, and thus to win their maximum recovery a jury would have to accept Plaintiffs' testimony of the time that they worked over Defendants' testimony. *E.g., Felix v. Breakroom Burgers & Tacos*, 2016 U.S. Dist. LEXIS 30050, at *5 (S.D.N.Y. Mar. 8, 2016) (approving FLSA settlement of 25% of maximum possible recovery where the maximum recovery was "far from inevitable" because, among other things, defendants claimed that the plaintiffs "worked substantially fewer overtime hours than [they] claimed[…].").

Plaintiffs also face serious litigation risks. Over $100,000 of Plaintiffs' possible recovery ($105,000) consists of penalties on their N.Y. Lab. Law §§ 195(1), 195(3) and 191. As numerous decisions from courts in this Circuit show, claims under N.Y. Lab. Law §§ 195(1) and 195(3) are subject to attack for lack of standing based on the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), at all stages of the litigation. *See, e.g., Acton v. Powerline Cycles, Inc.*, 2024 U.S. Dist. LEXIS 183252, at *6-9 (S.D.N.Y. Oct. 3, 2024) (dismissing NYLL § 195(1) and (3) claims for lack of standing following trial). Similarly, there is a split of authority in the New York State Court, Appellate Division as to whether Plaintiffs have a private right of action to pursue their § 191 claims. *Compare Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 107 N.Y.S.3d 286, 288-89 (1st Dep't 2019), *with Grant v. Glob. Aircraft Dispatch, Inc.,* 223 A.D.3d 712, 204 N.Y.S.3d 117, 125 (2nd Dep't 2024). Thus, if Plaintiffs could not establish that they suffered a "concrete harm" flowing from the lack of proper wage notices/wage statements and/or that they had a private right of action to pursue state law pay frequency claims, they faced the risk of having these claims dismissed.

This settlement, which was reached after complete discovery and with the assistance of an experience mediator, is clearly the result of arm's-length bargaining between experienced counsel, and there has been no fraud or collusion. The settlement is also fair and reasonable in light of the purposes of the FLSA. The settlement is not confidential, the Plaintiffs' release is limited to their FLSA and NYLL claims, and there are no non-disparagement provisions. *See*, *e.g.*, *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727, 2016 U.S. Dist. LEXIS 5366 (S.D.N.Y. Jan. 5, 2016).

## IV.     The Named Plaintiff's Service Awards Should Be Approved

The Settlement Agreement provides that the Named Plaintiff Luna will receive a $5,000 Service Award payment out of the Settlement Sum. This payment will compensate Mr. Luna for his services to the Opt-In Plaintiffs. Service awards are routinely granted to lead plaintiffs in collective and class actions. Such awards "serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Mikityuk v. Cision US Inc.*, 2022 U.S. Dist. LEXIS 135405, at *18-19 (S.D.N.Y. July 29,2022) (internal quotation marks omitted). Here, Named Plaintiff Luna initiated and litigated the action, sat for a deposition and participated in all aspects of discovery. Accordingly, a Service Award of $5,0000 is reasonable and should be approved. *See id.* at *21-23 (collecting cases awarding service awards of $10,000 to $15,000 to named plaintiffs).

### V. Plaintiffs' Counsel's Fees and Costs Should Be Approved

The Settlement Agreement provides that Plaintiffs' counsel will receive a total amount of $53,333.33 in fees. *See* Ex. 1 ¶ 2.a.ii. Under Plaintiffs' contingency fee engagement agreement, Plaintiffs' counsel is entitled to request reimbursement of one-third of the settlement amount as fees. *See Mireku v. Red Vision Sys., Inc.*, No. 11 Civ. 9671, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (noting the consensual nature of the fee arrangement); *see also Martinez v. Consulate Gen. of Algeria in N.Y.*, No. 16 Civ. 2390, 2016 U.S. Dist. LEXIS 157999, at *8-9 (S.D.N.Y. Nov. 15, 2016) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit."); *Rangel v. 639 Grand St. Meat & Produce Corp.,* No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit.").

The requested fee is also reasonable under a lodestar crosscheck. Plaintiffs' counsel spent a total of 288.3 hours on this case as a whole. Three attorneys worked on this case: the undersigned (161.2 hours), D. Maimon Kirschenbaum (21.9 hours), and Denise Schulman (10.4 hours). In addition, two paralegals and an administrative assistant performed work on this case.[3] The firm's contemporaneous time records for this case are attached hereto as Exhibit 2.

Mr. Kirschenbaum graduated from Fordham University School of Law in 2005 and has worked at Joseph & Kirschenbaum LLP ("JK") since then. JK is a law firm dealing almost exclusively with employee rights. Specifically, the firm represents employees in wage/hour and employment discrimination matters. As a result of his accomplishments, he became a member/partner of the firm in May 2007, and he currently manages the firm. Ms. Schulman received her J.D. from NYU School of Law, *cum laude*, in 2008 and joined JK in January 2009. She was an associate at JK until February 2017, when she became a partner. The undersigned graduated from McGill University's Faculty of Law in 2009 and joined JK in 2011. In January 2020, I was named partner of the firm. The overwhelming majority of all above attorneys' practice has been representing employees with employment-related claims, including wage-and-hour class actions. Courts have repeatedly recognized JK's skill and expertise in wage and hour litigation. *E.g.*, *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008, at 20:1-3 (S.D.N.Y. Dec. 22, 2015) (stating, "I think Mr. Kirschenbaum and Ms. Schulman and their firm are the best in breed – of firms doing this kind of work") (transcript attached as Exhibit 3).

In 2022, Judge Woods approved an hourly rate of $500 for Mr. Kirschenbaum, Mr. Nussbaum, and Ms. Schulman, as well as a $125 hourly rate for JK's paralegals. *Zivkovic v. Laura Christy LLC*, Case No. 17 Civ. 553 (S.D.N.Y. June 15, 2022) at 18:11-24 (transcript attached as Exhibit 4); *see also Martinenko v. 212 Steakhouse, Inc.*, No. 22 CV 518, 2024 U.S. Dist. LEXIS

---

[3] The paralegals/administrative assistants who worked on this case are Mariela Lini (58.6 hours), Andy Pichardo (46.6 hours), and Evelyn Velasca (12.7 hours). Ms. Velesaca joined JK as an administrative assistant in February 2022 and became a paralegal at the firm in January 2023. She received her B.A. from Hunter College in 2022. Before joining JK, Ms. Velesaca interned at Kramer Levin Naftalis & Frankel, the New York City Department of Social Services, and Volunteers of Legal Service. Ms. Lini has been a paralegal at JK since January 2024. She received her B.A. from John Jay College of Criminal Justice in 2019. Before joining JK, she had nearly five years of experience as a legal assistant/paralegal. Andy Pichardo has been an administrative assistant at JK since December 2023. He received his BA from The City College of New York in June 2023.

231925, at *9-12 (S.D.N.Y. Dec. 23, 2024) (approving these rates for Kirschenbaum, Schulman, and JK's support staff).

Using the above hourly rates yields a lodestar of $102,587.50. The requested fee thus constitutes a negative multiplier and is therefore objectively reasonable. *E.g.*, *Campos v. Goods*, No. 10 CV 224, 2011 U.S. Dist. LEXIS 22959, at *21 (S.D.N.Y. Mar. 4, 2011) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar."); *see also Quiroz v. NYC Bldg. Mgmt. LLC*, No. 16 CV 7077, 2017 U.S. Dist. LEXIS 141162, at *7 (S.D.N.Y. Aug. 30, 2017) (approving one-third fee that amounted to a 2.46 lodestar multiplier).

As noted above, counsels' time in the case encompasses the firm's time spent on *all* claims in the case, including those of the tipped front of the house employees. However, time spent on the tipped and non-tipped employees' claims is not readily severable. The proposed settlement of those tipped employees' claims is $565,000, meaning the total settlement amount for *all* claims in the action is $725,000 ($160,000 settlement for kitchen employees plus $565,000 settlement for tipped employees). Counsel intends to file a motion for attorneys' fees in that proposed class settlement and to seek one-third of that settlement (or no more than $188,333.33). Accordingly, the total maximum amount of attorneys' fees Plaintiffs' counsel will seek is $241,666.67 ($53,333.33 here + $188,333.33 in the classwide settlement). This total combined attorneys' fee amount of $241,666.67 will yield a lodestar of no more than 2.36[4] which, again, is well within the range of reasonable multipliers. Accordingly, the requested attorneys' fees in this settlement are reasonable.

As set forth above, we respectfully request that the Court approve the parties' settlement as fair and reasonable. We thank the Court for its attention to this matter.

Respectfully submitted,

/s/ *Josef Nussbaum*
Josef Nussbaum

cc: All counsel (via ECF)

---

[4] JK expects that its lodestar will increase prior to final approval of the classwide settlement, as it will have to oversee the settlement administration process.